OF

# THE STATE OF NEW JERSEY.

## OCTOBER TERM, 1903.

WILLIAM J. MAGIE, ORDINARY.

ALFRED REED, VICE-ORDINARY.

---

In re collateral inheritance tax against the VINELAND HIS-
TORICAL AND ANTIQUARIAN SOCIETY.

[Filed February 16th, 1904.]

1. The act of a surrogate in assessing on a legatee under a will a tax
on the legacy, under the provisions of section 13 of the Collateral In-
heritance Tax law, is not a judgment which will conclude the legatee
from contesting his liability to the tax, when called upon to show cause
before the orphans court why the tax should not be decreed to be paid,
under the provisions of section 16 of the law, although the legatee has
failed to appeal from the assessment of the surrogate within the time
limited by section 13. The New York act, as construed in *Matter of Wolfe,*
*137 N. Y. 205,* distinguished.

2. An incorporated society claiming to be exempted from taxation under the Collateral Inheritance Tax law as being within the exemptions enumerated in section 1, must make out its claim by proof.

3. When such a society claims exemption as a "charitable institution," it must appear that the purposes and objects to which it is bound to devote its property, are charitable within the doctrine of charitable uses.

4. Property devoted to educational purposes is within that doctrine. It will not be sufficient to show that the society is incorporated under the laws permitting the incorporation of societies for the promotion of learning; it must be shown that the property is in fact devoted to such purposes and has an educational character.

5. The objects of this society are "to collect and preserve historical and current accounts of events, persons and inventions, scientific investigations and photographs, drawings, models and specimens, and all other materials of a similar character connected with the interests of Vineland."

6. It appears that the collection of the society is now open to the public, but there is nothing in the terms of the legacy which was assessed, or in the organization or rules of the society, imposing on it any such duty in the future.—*Held*, (1) that the objects thus shown do not possess an educational character, and (2) that the collections of the society are not necessarily to be devoted to a public use.

On appeal from a decree of the orphans court of Cumberland county.

*Mr. J. Hampton Fithian,* for the appellant.

*Mr. Charles K. Landis,* for the respondent.

Magie, Ordinary.

The decree appealed from was made by the orphans court, under the following circumstances: By the will of Charles K. Landis, who died in the county of Cumberland, June 12th, 1900, a legacy was given to a corporation entitled the "Vineland Historical and Antiquarian Society." On March 18th, 1901, the surrogate of that county had appointed an appraiser, under the provisions of section 13 of the act entitled "An act to tax intestates' estates, gifts, legacies, devises and collateral inheritances in certain cases," approved April 15th, 1894 (*Gen. Stat. p. 3339*), and upon the report of his appraisement had fixed the value of the estate and the tax to which the same was liable, and

had given notice thereof in the manner prescribed by that section. No appeal therefrom was made either to the ordinary or to the orphans court within sixty days after the surrogate's assessment was made and filed.

The tax thus fixed was not paid, and the state comptroller notified the prosecutor of the pleas of the county of the failure to pay, and the prosecutor thereupon proceeded, under the provisions of section 17 of that act, to procure a decree from the orphans court, under the power conferred upon it by the provisions of section 16. Upon the prosecutor's request the surrogate of the county issued citations, and cited the persons interested before the orphans court, to show cause why the tax should not be paid. Upon the return of the citations the parties interested appeared by counsel, and the orphans court proceeded to the consideration of the matter thus presented. The learned judge, upon the facts before him, reached the conclusion that the legatee, the Vineland Historical and Antiquarian Society, was not liable to a tax upon its legacy, because he found it to be a "charitable" institution or organization, and so excepted from the provisions of the act by the express terms of its first section. Thereupon a decree was made discharging the rule to show cause and setting aside the assessment of the tax. From that decree this appeal is taken by the prosecutor of the pleas.

There are two contentions made by appellant in support of this appeal. The first is that the orphans court had no jurisdiction in this case to entertain the question of liability to the tax assessed upon the legacy, because the parties interested were debarred from raising that question by their failure to appeal from the surrogate's assessment within the time limited by the terms of section 13.

This contention involves the construction of section 13. The respondent argues that the appeal therein provided for relates only to the valuation and the amount of tax fixed, and not to the liability of the legatee thereto.

I feel unable to yield to this contention. The act of the surrogate, *prima facie,* fixes the liability to the tax as well as the amount thereof. The appeal given is from the appraisement

and the assessment, and I have no doubt that upon such an appeal the parties interested might well complain either of the amount assessed or of the liability to assessment, or both, and that the orphans court might, upon such an appeal, adjudicate accordingly.

But in the absence of an appeal under section 13, and an adjudication thereupon, I do not think the surrogate's assessment debars the parties from raising the question of liability when they are called upon, by citation, under section 16, to show cause why the tax should not be paid. The language of that section is, perhaps, wanting in clearness, but I think it must be construed as empowering the orphans court to determine whether the tax should be paid; to decree its payment, and to enforce such decree as other decrees of that court may be enforced, with the additional provision that a transcript of the decree may be given the effect of a lien by judgment. A party interested, thus cited, must be deemed to be permitted to interpose any objection to such a decree.

The court of appeals of New York, I am aware, has given a different construction to the section of the Collateral Inheritance Tax law of that state, which is in substantially identical terms with section 13 of our act. *In the matter of the estate of Wolfe, 137 N. Y. 205.*

The opinion of Judge Grey, in that case, is ingenious and forcible, but is based upon the provisions of section 15 of the New York act, which expressly confers on the surrogate's court jurisdiction "to hear and determine all questions in relation to the tax arising under the provisions" of the act. It was therefore held that the surrogate's act—adjudging liability within the jurisdiction conferred—had an element of finality, and would conclude the parties in subsequent proceedings for the collection of the tax assessed. This view was also expressed by Judge O'Brien, in the same court, in *Matter of the estate of Ullmann, 137 N. Y. 403.* See, also, *Amherst College v. Ritch, 151 N. Y. 343.*

But our act confers no such jurisdiction on the surrogate. On the contrary, the corresponding section of our act (15) ex-

pressly confers that jurisdiction upon the ordinary or the orphans court. The action of a surrogate, under our system, therefore, possesses none of the qualities of a judgment which would conclude the parties interested from contesting their liability when cited to show cause why a decree for the payment of the tax should not be made and enforced.

The other contention of the prosecutor of the pleas is that the orphans court erred in determining that the legacy in question was exempt from the tax imposed by the act under consideration, because given to a person or corporation excepted from its provisions.

The claim for exemption is put, and can only be put, upon the ground that the legatee, the Vineland Historical and Antiquarian Society, is a charitable institution within the meaning of the language used in section 1 of the act.

To determine whether an institution is "charitable," within the meaning of the Collateral Inheritance Tax act, resort must be had, in my judgment, to the accepted doctrine respecting charitable uses. That institution is charitable with the act, the property and funds of which are devoted to purposes which are charitable within that doctrine, i. e., for such purposes as would support as valid a creation of a trust or gift. Our courts of law, when called on to determine what property is exempted by similar designation from the imposition of annual taxes, resort to those doctrines. *Paterson, Receiver,* v. *High, 35 Vr. 116; Litz* v. *Johnston, 36 Vr. 169.*

The society, it appears, was incorporated under the provisions of the "Act to incorporate societies for the promotion of learning," approved April 9th, 1875. *Gen. Stat. p. 1925.* It is not open to question that gifts for educational purposes are gifts to valid charitable uses in this state. *Hyde's Executors* v. *Hyde, 19 Dick. Ch. Rep. 6.* In my judgment, any institution, the real purpose of which is to promote learning in the popular meaning of the word, and which is *bona fide* carrying out that purpose by means reasonably appropriate, is an institution of an educational character, and therefore charitable. But a right to exemption from the collateral inheritance tax will not be made

In re Vineland Historical and Antiquarian Society.

out by mere proof that the institution was incorporated under the act for the promotion of learning, or avows itself to be organized for the purpose of promoting learning. An institution claiming exemption on the ground of its educational character must disclose the objects to which it is bound to devote its property. It must appear that the objects disclosed have some educational value, and that the benefits and advantages of the institution in respect to such objects are open to the general public, or at least to such persons as may seek them. An association which collects and preserves a library of books, open to general use, would be a charitable institution under this act, for it furnishes the means of acquiring knowledge. It will not be excluded because many, or even all, of the books it collects attract the attention of scholars rather than of the general public.

It is made to appear in this case that the objects of the society now under consideration are the following, viz.: "To collect and preserve historical and current accounts of events, persons and inventions, scientific investigations and photographs, drawings, models and specimens, and all other materials of a similar character connected with the interests of Vineland."

Are the objects thus disclosed charitable in character?

The only contention on the part of the respondent is that such a collection which it is bound to preserve has, or will have, an educational value.

I find it extremely difficult to discover in the "materials" particularly mentioned any such adaptation to education or the promotion of learning as would support a gift for a charitable use. But the society is not confined to the collection of materials thus particularized, but has power to collect other "materials" of similar character. All the materials collected, however, must be connected with the interests of Vineland. Such a collection would not resemble a library, but rather a museum. Citizens of Vineland might resort to it out of curiosity, but I cannot perceive that it would perform any educational function.

There is another contention by the prosecutor which has great force. It appears that the legacy given to the society was given

---

In re Vreeland.

---

without any limitation or condition. The gift, therefore, did not impose on the society any duty with respect to its use of the fund, except that which may be inferred from the terms contained in the organization of the society as a corporation. The agreed-on facts show that the society now opens its collection (and what that now consists of is not disclosed) to the public, under proper regulations. But it does not appear that, in the certificate of its incorporation, or by any rule or by-law, the society is bound to maintain the collection open to the public.

As a society which claims exemption from the burden of taxation must show its right to be exempted, a failure of proof will be fatal to the claim. If the objects to which the society's property is devoted are not clearly charitable in the sense of being educational, or if it is not shown to be bound to permit a perpetual public use, I think the exemption ought not to be allowed. As, in my judgment, the society has failed to establish its right in these respects, I conclude that decree of the orphans court is erroneous. It should be reversed, and a decree made directing the payment of the tax assessed by the surrogate.