JOHN O. H. PITNEY AND JOHN R. HARDIN, EXECUTORS OF THE LAST WILL AND TESTAMENT OF MARCUS L. WARD, DECEASED, APPELLANTS, v. NEWTON A. K. BUGBEE, COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.

Submitted March 26, 1923—Decided April 27, 1923.

On appeal from the Supreme Court, whose opinion is reported *ante p.* 116.

For the appellants, *Pitney, Hardin & Skinner* and *Corwin Howell.*

For the respondent, *Thomas F. McCran,* attorney-general.

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons stated in the opinion delivered by Mr. Justice Katzenbach in the Supreme Court touching the imposition of a transfer tax upon the bequest to the New Jersey Historical Society.

MINTURN, J. (dissenting).　Marcus L. Ward enjoyed the laudable distinction of being a man of state-wide prominence, combined with a philanthropic instinct, which extended its beneficence to man and beast.　By the terms of his will he manifested this latter propensity to a marked degree, for he donated, besides his books and pamphlets, $20,000 to the New Jersey Historical Society, and a like sum to the New Jersey Society for the Prevention of Cruelty to Animals.　The legacy to the society for the prevention of cruelty to animals was sustained as a charity, and, therefore, became exempt from the state transfer tax.　The historical society legacy was held upon the strength of a former decision, in the Prerogative Court in another case, to be taxable as non-charitable. This appeal is intended to contest the legal soundness of the latter view.　The *Vineland Historical Society Case,* 66 *N. J.*

*Eq.* 291, upon which the Supreme Court based its conclusion, following the doctrine of *stare decisis,* was not affirmed by a majority vote of this court, and we are therefore not obliged to accord to it the force of a precedent. *Dewey Land Co.* v. *Stevens,* 83 *Id.* 314.

This court, in *George* v. *Braddock,* 45 *N. J. Eq.* 757, affirmed the proposition, that a bequest made for the purpose of printing and circulating the works of Henry George, upon the land question and cognate subjects, was educational in character and within the scope of a charitable use. That principle has been followed in *Hydes' Executors* v. *Hyde,* 64 *Id.* 6, and in other jurisdictions. *American Academy of Arts* v. *Harvard,* 12 *Gray (Mass.)* 582; *Minns* v. *Billings,* 183 *Mass.* 126.

The ratio *decidendi* in the Vineland case was that the institution was entirely parochial or local in character. Without conceding the legal validity of that reason as a basis for the decision, it is to be noted that this society, by the language of its constitution, partakes of no such restrictive attribute, but is erected: "To discover, procure and preserve whatever relates to any department of the history of New Jersey, natural, civil, literary or ecclesiastical, and generally of other portions of the United States." One must concede this to be a very laudable and patriotic purpose in the domain of education. In pursuance of this purpose, the society has issued thirty thousand volumes, many pamphlets, and maintains a very attractive building in Newark; a large collection of manuscripts, printed books, rare records, portrait paintings, engravings and varied historical evidences of our state life, history and development; in addition to being a library for the publications of the federal government.

Within reasonable hours and conditions its rooms are open to the public. It is exempt from local taxation by the city, under the provisions of the General Tax act, as within the statutory designation of a "charitable, benevolent or religious" institution.

In such a situation it would seem rather anomalous, to characterize the legacy for dumb inarticulate animals as

charitable, and exempt from the state tax; but to exclude from that category a similar legacy, made in behalf of the dumb articulate human animal, or as Shakespeare classifies him. "the paragon of animals." *Ex literas lux;* and there would seem to be no more charitable or beneficent donation, that man can make to his fellow-man, in this material age, when men are looking beyond the horizon for strange gods, and neglecting those of their own household, than a benefaction which will enable him to acquire easy access, to the well springs and founts of the history and philosophy of his own land.

When Marcus L. Ward conceived this philanthropy, his father had filled with honor the highest post of his state, and occupied for years a notable and honorable position in its daily life. Manifestly, in the declining vista of a well-spent life of honor and profit to himself and to his state, it is not difficult to conceive the son, contemplating the patriotic struggles and conceptions of his forefathers, and the laudable efforts of the trustees of this patriotic institution, to preserve the records of our state life to generations yet unborn. To him in that vision there obviously arose in practical application the philosophy of Epictetus; which by a like effort of the Mediæval public spirit has been transmitted to us: "You will do the greatest service to the state if you shall raise not the roofs of the houses but the souls of the citizens: for it is better that great souls should dwell in small houses rather than for mean slaves to lurk in great houses."

An effort of that character should be hailed with liberality and approval, rather than stamped with the declaration that the state does not recognize it as a charity.

For these reasons this judgment should be reversed.

I am requested to state that Judge White concurs in these views.

*For affirmance*—The Chief Justice. Swayze, Trenchard, Heppenheimer, Gardner, Ackerson, Van Buskirk, JJ. 7.

*For reversal*—Minturn, White, JJ. 2.