## IN RE GEORGE W. HUYLER.

Argued July 10, 1945—Decided ·July 13, 1945.

Before Justice HEHER, at chambers.

For the petitioner, *Louis C. Friedman.*

For the State, *Walter D. Van Riper,* Attorney-General, and *Eugene T. Urbaniak,* Assistant Deputy Attorney-General.

HEHER, J. Upon the representation that he is illegally confined in the state prison, petitioner Huyler was granted a writ of *habeas corpus* under *R. S.* 2 :82–1, *et seq.*

The return made by the principal keeper of the prison sets forth that petitioner entered the prison on January 3d, 1940, under separate sentences on two convictions in the Passaic Quarter Sessions for "breaking, entering, larceny and receiving," each for the maximum term of five years and the minimum term of three years, to run consecutively, or a sentence in the aggregate of six to ten years; that this was petitioner's "third sentence" to the state prison, and he is therefore a "third offender" within the intendment of *section* 30 :4–106.2, and ineligible for parole until he shall have served three-quarters of the current maximum sentence; that petitioner "has been allowed commutation time of 648 days and work time of 236 days on his third sentence which establishes the minimum release date of January 30th, 1945, * * * computed by deducting the commutation time and work time from July 3d, 1947, which is the date upon which three-quarters of the maximum sentence would normally expire;" that as a third offender, petitioner "is now held in confinement and is presently being required to serve a period of 1,149 days, which represents commutation time allowed him on a previous second sentence to the state prison;" that on April

5th, 1929, he was sentenced to the state prison for the term of twelve years on a conviction for "assault with intent to kill" in the Passaic Quarter Sessions, and was "released" on September 6th, 1937; and that on November 16th, 1923, he was sentenced to the prison for the maximum term of seven years and the minimum term of four years on a conviction for "breaking, entering and larceny" in the Morris Quarter Sessions, and was released on December 21st, 1927. The return has not been traversed by the prisoner. He maintains that his continued confinement is in violation of *section* 30:4–142, and he is therefore illegally restrained of his liberty.

The question is one of statutory construction. Is the prisoner now being detained in excess of the sentence prescribed by law?

It is a primary canon of construction that the provisions of statutes *in pari materia* shall be reconciled and harmonized, if possible, into a consistent, homogeneous whole. *Crater* v. *County of Somerset,* 123 *N..J. L.* 407; *Broderick* v. *Abrams,* 116 *Id.* 40. This rule is in aid of the discovery of the legislative intent, and its application is circumscribed accordingly. The effectuation of the legislative will is the end to be served in the exposition of statutes; and this of necessity calls for an accommodation of apparent conflicts to advance the essential statutory policy, giving to each clause a meaning not in opposition to the related provisions, if that is reasonably consonant with the terms employed to voice the legislative design. The literal import of the terms ofttimes gives way to the outstanding legislative purpose, considering the particular statute in relation to statutes *in pari materia.* Implied repealers are not favored in the law; the intention to effect the repeal of an earlier statute must be free from reasonable doubt. *Hartman* v. *Board of Chosen Freeholders,* 127 *Id.* 170. The earlier statute is modified by a later inconsistent enactment only to the extent of the repugnancy.

It is basic in the statutory scheme here that a third offender shall be ineligible for parole by the prison board of managers unless he shall have served "at least" three-fourths of the maximum sentence imposed. *Section* 30:4–106.2 *Section* 30:4–106.1 authorizes the managers to release a prisoner on

parole upon the expiration of the minimum term, except as provided in *section* 30:4–106.2. The source of *section* 30:4–106.2 is *chapter* 194 *of the Laws of* 1936, as amended by *chapter* 38 *of the Laws of* 1937. *Pamph. L.* 1936, *p.* 474; *Pamph. L.* 1937, *p.* 80. It was the latest of the provisions under review, prior to their incorporation in the Revision. And *section* 2:103–9 provides that a third offender shall serve the sentence imposed for such third offense, without "commutation * * * on the third sentence," and shall also serve "the commutation time earned and allowed under his second sentence." It derives from *chapter* 218 *of the Laws of* 1927. *Pamph. L., p.* 413. These provisions are not incongruous, when taken and compared together. In such circumstances, the prisoner is not entitled to commutation of the third sentence and, moreover, he is obliged to serve the commutation time earned and allowed on the second sentence, but in no event shall he be eligible for parole by the prison managers until he has served three-fourths of the current maximum sentence.

The prisoner's main reliance is upon *section* 30:4–142, providing that if a prisoner released or discharged from the state prison before the expiration of his maximum term shall be again sentenced to the prison on a subsequent conviction, "the unexpired portion of the previous sentence shall not be added to the subsequent sentence, nor shall the prisoner be held on any subsequent sentence for any cause for a term greater than the maximum stated in the sentence upon which the commitment is made." It does not serve him.

Viewed in the light of *section* 2:103–9 and the other provisions *in pari materia,* is not this section fairly susceptible of the interpretation that the time commutation earned under *section* 30:4–140 for good conduct, faithful performance of assigned labor, efforts directed toward self-improvement, and in lieu of pay for work done, shall be considered as a reduction of the original sentence in determining the "unexpired portion" of the sentence? It would seem that this is the legislative concept of that phrase. The latter section provides for such remission from both the maximum and the minimum term. Is not the term fixed by the judgment of conviction,

less the allowances earned under the last-cited section, the sentence laid down by the law? If so, the two provisions are reconcilable; and, as stated, a construction is required that will give effect to both sections, leaving no part of either inoperative, if that is reasonably possible. That interpretation would render effective the clause of *section* 30:4–142 providing that the prisoner shall not be held on any subsequent sentence "for a term greater than the maximum stated in the sentence upon which commitment is made."

But there is no occasion to pursue this inquiry to a conclusion. *Section* 30:4–142 was carried into the *Revision of* 1937 from *chapter* 147 *of the Laws of* 1918 (*Pamph. L., pp.* 343, 366, § 308); and if it is inconsistent with *section* 2:103–9, the latter controls.

Whatever virtue it may otherwise have, the general rule that the later of two contradictory provisions in a statute prevails is an artificial and illusory device to effectuate the legislative intention in the case of a revision of general laws such as this. *Vide: Commercial Trust Co.* v. *Hudson Board of Taxation,* 86 *N. J. L.* 424; *affirmed,* 87 *Id.* 179. It rests upon the presumption that the second in position is the last expression of the legislative will. In such case, as in all others, the primary object is to ascertain the legislative design with reasonable certainty. The intention is the life of the law. Where two irreconcilable statutory provisions on the same subject, separated in point of time of enactment so that the earlier section was by implication repealed by the later, are embodied in a revision of general laws, the re-enactment of the former is deemed an oversight and ineffective. *Lewis' Sutherland Statutory Construction* (*2d ed.*), §§ 271, 281. This rule yields only to a contrary policy and intent clearly and unmistakably indicated by provisions of the Revision *in pari materia.* Barring such, it is presumed that the intention was to re-enact the last expression of the legislature on the subject. *R. S.* 1:1–4 directs that the provisions thereof, "not inconsistent with those of prior laws, shall be construed as a continuation of such laws." There is a presumption against a legislative intention, by a revision of general laws, to work a change of substance; the intention to alter the essence must

be clearly and explicitly manifested. *Crater* v. *County of Somerset, supra.* And there is also a presumption that the legislature did not intend to introduce into the Revision two provisions on the same subject so contradictory as to neutralize each other. Mere changes of language or plain inadvertences will not be allowed to overrule the obvious intention of the lawmakers. The amendment of *section* 2:103–9 effected by *chapter* 219 *of the Laws of* 1940 (*Pamph. L., p.* 888) is significant of a legislative understanding of the continued subsistence of the original *Act of* 1927, *supra.*

Comparing the related sections of the Revision, there is a conspicuous policy to provide an incentive for reformation by imposing penalties for recidivism. The first offender and the unregenerate criminal are placed on different levels. There are readily understandable grounds for this policy. If there be repugnancy, there is nothing to repel the presumption that the statute having priority in point of time, *section* 2:103–9, prevails.

As regards the commutation of the third sentence, attention is directed to the provision of the last-cited section that "no commutation shall be allowed \* \* \* on the third sentence."

The petitioner is remanded.