DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, APPELLANT, v. DIVISION OF TAX APPEALS, NEW JERSEY STATE DEPARTMENT OF TAXATION AND FINANCE, ET AL., RESPONDENTS.

WALTER P. GARDNER, TRUSTEE OF THE PROPERTY OF THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, APPELLANT, v. DIVISION OF TAX APPEALS, NEW JERSEY STATE DEPARTMENT OF TAXATION AND FINANCE, ET AL., RESPONDENTS.

Argued September 19, 1949—Decided October 17, 1949.

30

*Mr. David I. Mackie,* of the New York Bar, argued the cause for appellant Delaware, Lackawanna & Western Railroad Company (*Messrs. Carpenter, Gilmour & Dwyer,* attorneys).

*Mr. James D. Carpenter* argued the cause for appellant Walter P. Gardner, trustee of the property of The Central Railroad Company of New Jersey.

*Mr. Benjamin C. Van Tine* argued the causes for respondents (*Mr. Theodore D. Parsons,* Attorney General of New Jersey, attorney).

*Mr. Frank P. McCarthy* argued the cause for respondent City of Jersey City (*Mr. John B. Graf* and *Mr. Jacob J. Levey,* on the brief).

The opinion of the court was delivered by

OLIPHANT, J. These are appeals from judgments of the Appellate Division of the Superior Court affirming judgments

of the Division of Tax Appeals, Department of Taxation and Finance, against the Delaware, Lackawanna and Western Railroad Company for the tax years 1942 to 1946 inclusive and against the Central Railroad Company of New Jersey for the tax year 1946.

The former company will be referred to as the Lackawanna and the latter as the Central.

The Lackawanna appeal involves (1) items of back taxes claimed to be proper deductions in years other than the years in which the taxes were due and payable; (2) items of interest paid on account of default in payment of principal taxes and claimed to be proper charges to the railroad tax accrual accounts in the years in which they were paid; and (3) an item representing an amount paid under protest and later refunded, which the Lackawanna claims to be a proper accrual against its 1946 operating income.

The Central appeal involves the last two items referred to in the Lackawanna appeal, interest payment and the payment of an amount ultimately found not to be due. Central makes no claim for deductions for items of back taxes it having charged all its taxes to current accounts as such taxes became due and payable, notwithstanding it was contesting its liability for a substantial portion of such taxes. The several items will be discussed in the order set forth above.

### The Back Taxes.

As was pointed out in *Norton v. State Board of Tax Appeals,* 134 *N. J. L.* 57 (*E. & A.* 1946), the tax levied on railroad property had for years been continuously in litigation and large amounts of these taxes were in default. In 1941 a new method of taxing such property was enacted, *P. L.* 1941, *c.* 291. This act was amended the following year by *P. L.* 1942, *c.* 169 (*N. J. S. A.* 54:29A–1 *et seq.*). These laws in substance provided for a combination property tax and franchise excise tax computed in a given year on the basis of the *net operating income* of a railroad system for the preceding calendar year. The tax was not a property tax upon the net

income itself but rather an excise tax measured by the net operating income of the preceding year and we are here concerned with whether items of back taxes are properly chargeable as deductions from the operating revenue of years other than that against which such taxes were levied and during which they became due and payable.

Clearly net operating income for a given year cannot be determined by deducting unpaid taxes of prior years or the accrued interest upon such unpaid taxes. The excise being measured by the net operating income for the prior year, this necessarily excludes all items of debit not related to that year's operation.

The argument of appellants proceeds on the hypothesis that the Act of 1941 required the State Tax Commissioner to allow as deductions in determining the next preceding year's net operating income any amounts of back taxes permitted by the Interstate Commerce Commission to be included in current operating income accounts. This interpretation would defeat the legislative purpose. It would put a premium on defaults in the payment of taxes by thereby decreasing the tax burden.

Lackawanna defaulted in payment of its 1933 taxes. In 1939 the litigation concerning these taxes was ended and payment in an amount equal to unpaid principal only was made. Lackawanna also defaulted in payment of taxes for the years 1934 to 1940 inclusive. The determination of the tax litigation for these years was finally determined in 1941 when the United States Supreme Court denied *certiorari*. From 1933 to 1940 Lackawanna paid a portion of the tax levied in each year but charged to current accounts an amount in excess of that which it paid although the whole of the unpaid amount was in litigation. As was pointed out in *Norton v. State Board, supra,* and as again disclosed by the instant record, during all the period from 1932 to 1940 in which railroad taxes were being contested and litigated certain railroad companies accrued all of their current taxes in the years in which they were levied, while others accrued only the uncontested portion thereof. That Lackawanna's treatment of such items

was not orthodox is disclosed by the various certificates covering the audits for the years in question.

When in 1941 the litigation concerning the 1934–1936 taxes terminated Lackawanna began to charge back taxes in the amount of approximately $5,900,000 to current accounts at the rate of $100,000 per month. An examiner for the Interstate Commerce Commission questioned this method of charging such items but in August, 1942, that body gave special permission for such treatment of the item of back taxes.

The letter of Lackawanna requesting such permission is informative. The letter states that such an unusual item should not be placed in the 1941 operating accounts as this would distort them. That such was still the opinion of Lackawanna's comptroller and its auditor several years later is disclosed by the record.

We might well inquire, from the Interstate Commerce Commission's viewpoint, what does distort an account and whether since the State is concerned with determining the net operating income of a railroad for tax purposes, anything not properly a charge against a given year would not distort the account as far as the State of New Jersey is concerned? We do not have to answer that question. In the definition of income accounts contained in the Interstate Commerce Commission's regulations will be found the answer. The income accounts are designed to show as nearly as possible the earning experience of a railroad for the fiscal year covered by the annual report. As a matter of expediency, because there is no method for amending the reports, items for past years are of necessity permitted to be charged to accounts of later years. But such accounts are tagged by the regulations as "delayed items" and are covered by special instructions.

That Lackawanna charged the back taxes as "delayed items" is clearly shown by its own testimony. Obviously "delayed items," items covering the back years' taxes, are not current items. It is idle to contend the Legislature intended the inclusion of such back taxes in computing next preceding year's net railway operating income.

We re-affirm what was said in *Norton v. State Board, supra,*

at *p. 63*, "When the Legislature used the words 'railway tax accruals' it meant something more than mere Interstate Commerce Commission permission to include an item in a book-keeping account or a report. It meant something specific. It meant the type of item that on the date of the passage of the act went into such account as a matter of course. It meant current taxes. *In re Reduced Rates*, 68 *Interstate Commerce Commission* 676, we find (at *p. 683*) :

"Under our system of accounts all charges to the account 'railway tax accruals' are deducted from railway operating revenues before arriving at railway operating income, and all State and Federal taxes, income or other, relating to carriers' railway property, operations, and privileges, are charged to that account. This method of accounting was recently sanctioned by the Supreme Court of the United States in *Galveston Electric Co. v. City of Galveston*, 258 *U. S.* 388," and at *p. 62* that " 'tax accruals' means the current taxes for the particular year which have been assessed in conformity with law, *e. g.*, the amount certified by the tax assessor."

■ Appellants assert the action of the Director of the Division of Tax Appeals was, in effect, an arbitrary increase of the operating income, and constituted an assessment not only attributable to New Jersey, but actually upon the earnings of the railroad realized in other states in which the system operates. It is claimed such action constituted an unreasonable burden upon interstate commerce and operates as a denial of due process. The point is not well taken.

■ ■ Where operating income is taken as the franchise base, it cannot exceed the portion fairly allocable to New Jersey, but this principle is not violated by confining the tax base to the income actually earned during the particular year. It is not a tax upon the earnings but an excise measured by the earnings, and the base does not violate the principle.

■ In determining "net operating income" we find no merit in the contention the Legislature had in mind the figure as fixed by the Interstate Commerce Commission. Obviously this would constitute an unlawful delegation of legislative power in the sense that the net income would depend upon

the action of the Commission from time to time. *Township of Bernards v. Allen*, 61 *N. J. L.* 228 (*E. & A.* 1897); *Hoboken v. Martin*, 123 *N. J. L.* 442 (*E. & A.* 1939); *Veix v. Seneca Bldg. & Loan Ass'n*, 126 *N. J. L.* 314 (*E. & A.* 1941); *Norton v. State Board, supra.* That Commission did not generally permit the deduction of interest on tax arrears in the calculation of net income for a particular year, although it apparently permitted the roads operating in New Jersey to do so on the supposed authority of *Wilentz v. Hendrickson*, 135 *N. J. Eq.* 244 (*E. & A.* 1944).

The action of the Interstate Commerce Commission in permitting the Lackawanna to allocate the unpaid and unapproved portion of the taxes for 1934 to 1940 in the years 1941 to 1944 has no bearing upon the meaning and intent of our statute. The returns made to the Interstate Commerce Commission are not made for the purpose of taxation under the State statute. The holding of the former Court of Errors and Appeals in the *Norton case* relative to this point is dispositive of it.

██ Appellants further make much of the fact that their system of accounting was proper under the authority of the United States Supreme Court in *Dixie Pine Products Co. v. Commissioner of Internal Revenue*, 320 *U. S.* 516, 88 *L. Ed.* 270, 64 *S. Ct.* 364 (1944), and *Security Flour Mills v. Commissioner of Internal Revenue*, 321 *U. S.* 281, 88 *L. Ed.* 725, 64 *S. Ct.* 596 (1944). As pointed out in the *Norton case* the Federal Income Tax was involved in these cases and, in both, the attack was upon the validity of the tax itself, not the amount of the assessment. A further reason why these cases and their like are not controlling is that in income tax cases the question involves net corporate income. Here the State is not interested in the net corporate income of the railroads but in their net operating income, which is the statutory yardstick.

*The Interest Items.*

Because of default in payment of 1933 to 1940 taxes Lackawanna became liable for large interest payments. Central also

became liable for large amounts of interest by reason of default in payment of its 1932 to 1940 taxes and for interest due because of payment of certain taxes of the New York & Long Branch Railroad Company for which Central was liable.

In 1941 the Legislature sought to forgive the interest payment due on account of the default in payment of taxes by the several railroad companies operating in the State, *P. L.* 1941, *c.* 290, as amended by *P. L.* 1942, *c.* 241. These acts were held to be unconstitutional in *Wilentz v. Hendrickson, supra.* Thereafter both Lackawanna and Central paid the interest amounts. Lackawanna now seeks to charge such interest payments against 1944 and 1945 operating income and so reduce its 1945 and 1946 franchise excise tax. It contends the holding in *Wilentz v. Hendrickson, supra,* is that interest is a part of the tax and therefore is properly chargeable to the railway tax accrual account for the year in which the interest was paid. Central makes a similar claim.

The essence of the holding in that case was that interest was compensation for deprivation of the principal, that as it occurred it became a vested right just as much as the principal of the tax, and the obligation thereby arising could not be remitted under the Constitution for that would constitute a gift of public funds. The fact it becomes a fixed obligation which may not be forgiven does not have any bearing upon the meaning of the statutory provision providing for the assessment of the excise.

To determine the legislative intent as to the statute under consideration we must look to the dates July 22, 1941, and May 21, 1942, when the original act and the amendment were approved and on such dates such items were not properly chargeable to operating income accounts.

In 1941 and 1942 amounts payable on account of default in payment of taxes were covered by cases A-38 and A-179 of the Interstate Commerce Commission Accounting Bureau. The former provided that when taxes are not paid promptly the additional amounts assessed under Federal and State statutes for failure to pay such taxes when due should be charged to Account 547 "Interest on Unfunded Debt" and the

latter provided that interest paid on deferred taxes should be charged to Account No. 547 "Interest on Unfunded Debt."

Thus, whether it be called penalty or interest or additional taxes, an amount payable on account of default in payment of taxes was chargeable to a non-operating income account. There is nothing in *Wilentz v. Hendrickson, supra,* or any other authority which holds that the items here in litigation under this point are not payments due because of default in payment. Thus, on July 22, 1941, and May 21, 1942, such items belonged in the non-operating account "Interest on Unfunded Debt."

We reiterate what was said in *Norton v. State Board, supra,* "In determining whether an item is a proper deduction as a 'railway tax accrual' within the legislative intent as expressed in the Railway Tax Act, we believe the following tests should be applied: 1—Is the item of the type that prior to May 1, 1942, would have been customarily and in accordance with recognized accounting practices of the time included in the railway tax accrual account? 2—It having been determined that the item is of the proper type, is the year against which the item is sought to be charged the proper year? The first test is important for the obvious reason that the Legislature could not have intended that anything other than taxes as actually assessed and levied should be included in the tax accrual account. At the date of the passage of the act this appears to have been the policy of the Interstate Commerce Commission. The second test is necessary to prevent a manipulating of accounts to the detriment of the state's revenue." (*P.* 64.)

The interest items do not meet the first test.

■ It is significant that the Legislature, when on April 29, 1948, it amended the Railroad Tax Act, *P. L.* 1948, *c.* 40, and therein re-enacted the provisions concerning tax accruals as contained in the act under review, acquiesced in and adopted the construction of the Act as placed upon it by the court of last resort in the *Norton case* which had been filed January 1, 1946, more than two years prior to the amendment. Under such circumstances it must be assumed the Legislature acted

with the judicial definition and construction in mind. *American Woolen Co. v. Edwards, Comptroller,* 90 *N. J. L.* 69 (*Sup. Ct.* 1916) ; affirmed, 90 *N. J. L.* 293 (*E. & A.* 1917).

 With particular reference to interest paid by Central on account of default in the payment of taxes owed by the New York and Long Branch Railroad Company we reach the same conclusion. Central was obligated by contract to pay 50% of the taxes and interest owing by the New York and Long Branch Railroad Company. The payment of these taxes was properly chargeable to "Joint Facility Rents," Account No. 541, which account provides for inclusion therein of "amounts paid or payable by the accounting company in reimbursement for taxes on property jointly used shall be charged to this account."

There is no provision in the definition for interest payments on account of default because like all other interest payments such are not a charge to operating income accounts. Nothing has been shown to disclose a legislative intent to have the New York and Long Branch interest payment treated other than as a non-operating income charge.

### *Additional 1941 Taxes.*

 In 1945 the former Supreme Court held the Railroad Tax Act of 1941 to be unconstitutional for the tax year 1941, *Jersey City v. State Board,* 133 *N. J. L.* 202. Immediately thereafter Lackawanna paid an additional amount representing increased 1941 principal taxes upon the understanding that the sum paid would be repaid to it if it should be determined that the Supreme Court was in error. Central some time later in 1945 paid an additional amount of principal tax and a further amount determined by it to be due as interest. The order of the United States District Court directing such payments provided that in the event the Supreme Court was in error the payments made would be credited on future taxes.

On May 3, 1946, the former Court of Errors and Appeals reversed the Supreme Court, *Jersey City v. State Board of Tax Appeals,* 134 *N. J. L.* 239, and held the Railroad Tax

Act of 1941 to be wholly constitutional. Immediately thereafter the State repaid Lackawanna the additional sum paid on its 1941 taxes. Provision was also made for crediting the additional payment of 1941 taxes and interest to the 1946 taxes of Central.

Both Lackawanna and Central now claim that the provisional payments were 1945 railway tax accruals in computing its 1946 franchise excise tax. We agree with the State Tax Commissioner that such items were not properly deductible as railway tax accruals in computing the 1946 franchise tax for the reason that such amount was never due and payable. Even if a sum is properly deductible when the tax is computed and thereafter it is determined not to be due and payable the Tax Commissioner is required to re-compute the tax to eliminate any such item. The statutory provision giving the Tax Commissioner the power to re-compute a tax for a period of five years was designed to cover just such a contingency. It was the legislative purpose to have the State share with the railroad companies in good earning years and the purpose is only accomplished if we determine the true net operating income for each respective accounting period.

The judgments are affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.