9 N.J. Super. 212 (1950)
75 A.2d 823
TAPPAN WASHINGTON MEMORIAL CORPORATION, A NEW YORK CORPORATION, APPELLANT,
v.
WALTER T. MARGETTS, STATE TREASURER, ACTING AS DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1950.
Decided October 5, 1950.
*213 Before Judges JACOBS, BIGELOW and JAYNE.
Mr. James V. McNamara argued the cause for the appellant (Messrs. McNamara & McNamara, attorneys).
Mr. William A. Moore argued the cause for the respondent (Mr. Theodore D. Parsons, Attorney General of New Jersey, attorney).
*214 Mr. Louis Auerbacher, Jr., filed a brief amicus curiae for the Museum of the City of New York.
The opinion of the court was delivered by JACOBS, S.J.A.D.
The appellant Tappan Washington Memorial Corporation was organized under New York law and received a charter to operate the DeWint House in Rockland County, New York, and maintain an historical museum in connection therewith. The DeWint House was the scene of significant events in American Revolutionary history and was occupied by General Washington in 1780 and thereafter. In accordance with its charter requirements the appellant has maintained the property as a public museum accessible to the public without charge. In 1949 the decedent, a resident of Passaic County, devised property in New Jersey to the appellant. The Transfer Inheritance Tax Bureau of the Division of Taxation assessed this property at full rate (R.S. 54:34-2(d)) rejecting the appellant's contention that it was entitled either to total exemption as an "educational institution" under R.S. 54:34-4(d) or to partial exemption as a "benevolent or charitable" organization under R.S. 54:34-2(b). The present appeal is from this action.
Courts throughout the country have recognized that while libraries and museums devoted to public use are not strictly places of instruction such as schools, they, nevertheless, serve important educational purposes and may be deemed to be charities within tax exemption statutes. See Molly Varnum Chapter, D.A.R., v. City of Lowell, 204 Mass. 487, 90 N.E. 893 (1910); Mitchell v. Reeves, 123 Conn. 549, 196 A. 785 (1938); 10 Am. Jur., p. 632; 14 C.J.S. 446. It is true that in In re Vineland Historical and Antiquarian Society, 66 N.J. Eq. 291 (Prerog. 1904); affirmed, 67 N.J. Eq. 730 (E. & A. 1905), and Pitney v. Bugbee, 98 N.J.L. 116 (Sup. 1922); affirmed, 98 N.J.L. 889 (E. & A. 1923), bequests to the Vineland Historical and Antiquarian Society and the New Jersey Historical Society were held not to be within the tax exemption provisions applicable to charities generally. Those decisions, however, were expressly rested *215 upon the ground that the charter provisions there presented did not sufficiently disclose the educational character of the societies or their obligation to devote their property to public use. They do not preclude application of the desirable and widely accepted view that an organization exclusively engaged without profit in the operation of a historical museum for the education and enlightenment of the public in accordance with appropriate charter provisions and requirements may be deemed to be charitable within the contemplation of tax exemption statutes. In the Vineland case Ordinary Magie stressed that an institution claiming exemption because of its educational character must "disclose the objects to which it is bound to devote its property" and it "must appear that the objects disclosed have some educational value, and that the benefits and advantages of the institution in respect to such objects are open to the general public, or at least to such persons as may seek them." Cf. Wilber v. Owens, 2 N.J. 167, 174 (1949).
In the light of the foregoing we find little difficulty in reaching the conclusion that the appellant was organized and operated for "benevolent or charitable" purposes within the contemplation of R.S. 54:34-2(b). Its provisional charter, granted in 1934 by the Education Department of the University of the State of New York, expressly set forth that it was being incorporated as an educational institution for the specific purpose of operating the DeWint House and maintaining in connection therewith "a museum of objects and memorabilia connected with or descriptive of the Colonial and Revolutionary periods and access shall be permitted to the public at such reasonable times and under such reasonable regulations as the trustees may determine." The provisional charter further stated that an absolute charter would be granted if, within five years, the corporation acquired sufficient resources and satisfied the Regents of the University that it was "maintaining an institution of educational usefulness and character." In 1941 an absolute charter was issued and the appellant has at all times met the terms of its charter *216 and has fully served the public in compliance therewith. It is not disputed that no part of its net earnings inures to the benefit of any "private stockholder or other individual or person." R.S. 54:34-2(b).
The more troublesome question before us is whether the appellant is entitled to total exemption as an "educational institution" within the contemplation of R.S. 54:34-4(d). Here, unlike the partial exemption in R.S. 54:34-2(b), the issue is not simply whether a historical museum devoted to public use is broadly educational within the comprehensive statutory grouping of "benevolent or charitable" organizations for partial exemption. On the contrary, the issue is whether it falls within the limited grouping contemplated by our Legislature in its specific designation of "educational institutions" for total exemption. In its primary sense the term "educational institutions" would be taken to refer to universities and other schools where students are taught by instructors; presumably that would be its ordinary meaning in common parlance. See New Britain Trust Co. v. Stoddard, 120 Conn. 123, 179 A. 642 (1935). On the other hand, a legislative body might use the term in its broader sense contemplating institutions which serve an educational purpose without regard to the teacher-student relationship. United States v. Proprietors of Social Law Library, 102 F.2d 481 (1 Cir. 1939). Accordingly, we are called upon to interpret the term as actually used in R.S. 54:34-4(d), in the light of its history, purpose and context. Ablondi v. Board of Review, 8 N.J. Super. 71, 75 (App. Div. 1950). Cf. Imbrie v. Marsh, 3 N.J. 578 (1950); Delaware, Lackawanna and Western Railroad Co. v. Division of Tax Appeals, 2 N.J. Super. 93, 98 (App. Div. 1949); affirmed, 3 N.J. 27 (1949); app. dism., 338 U.S. 946 (1950).
Under earlier statutes transfers to churches, hospitals and orphan asylums, public libraries, Bible and tract societies, and religious, benevolent and charitable institutions were totally exempt from our transfer inheritance tax provisions. See P.L. 1909, c. 228; P.L. 1912, c. 226; P.L. 1914, cc. *217 57, 151. In 1922 this total exemption was reduced to partial exemption. P.L. 1922, c. 174. In P.L. 1925, c. 102, a new provision was added (R.S. 54:34-4(d)) which granted total exemption to property passing since July 1, 1924, to "any institution solely educational for whose benefit there may have been or may hereafter be appropriations made by the Legislature of this State." It was undoubtedly intended to benefit educational institutions such as Rutgers and Princeton Universities and operated in that fashion. See Agnew v. Bugbee, 114 N.J. Eq. 324 (Prerog. 1933); Bugbee v. Mills, 116 N.J. Eq. 59 (Prerog. 1934). In P.L. 1948, c. 268, R.S. 54:34-4(d) was amended to provide, in part, that total exemption shall be afforded to the decedent's property which passes to "any educational institution no part of the net earnings of which inures to the benefit of any private stockholder or other individual or corporation." The statement attached to this amendment, when originally introduced as a legislative bill, set forth that its purpose was "to encourage privately endowed higher education by making uniform the exemption from inheritance tax of bequests and devises to all educational institutions not operated for profit" and that its language would confine "the full exemption of bequests to such institutions as Princeton University, Rutgers University, the State University of New Jersey, the Institution for Advanced Study, Drew University, St. Peter's College, Seton Hall College, Upsala College, John Marshall College, Newark College of Engineering, Stevens Institute of Technology, and other privately-endowed nonprofit institutions at the elementary, secondary and higher educational levels in this State, and on a reciprocal basis in other States." In Flagg v. Johansen, 124 N.J.L. 456 (Sup. 1940), the former Supreme Court held that a statement attached to a legislative bill upon introduction was of no significance in judicial construction. But cf. Winne v. Cassale, 100 N.J.L. 291, 295 (E. & A. 1924). Although we recognize that the introducer's statement is his own and not necessarily that of the legislative body, it may shed light on the stated mischief sought to be remedied *218 (Richardson v. Essex National Trunk and Bag Company, 119 N.J.L. 47, 50 (E. & A. 1937)), and we incline to the view that reference thereto ought be permitted for whatever aid it may furnish in reaching a proper interpretation of the legislative enactment. Cf. Imbrie v. Marsh, supra. Words are intended to convey thoughts and oftentimes they do so imperfectly; nevertheless, the goal remains to ascertain what was meant by what was said and the available avenues which may assist in attaining that goal should be kept open. See United States v. Dickerson, 310 U.S. 554, 562, 84 L.Ed. 1356, 1362 (1940), where the court noted the comment by Chief Justice Marshall in United States v. Fisher, 2 Cranch (U.S.) 358, 386, 2 L.Ed. 304, 313 (1804), that: "Where the mind labours to discover the design of the legislature, it seizes everything from which aid can be derived."
However, we need not pursue this matter further since we have reached the conclusion that, whether or not the introducer's statement be regarded, the terms of P.L. 1948, c. 268, did not, in their ordinary signification (Hackensack Trust Co. v. Hackensack, 116 N.J.L. 343, 346 (Sup. 1936)), afford total exemption to historical museums which are in no wise akin to traditional educational institutions such as universities and other schools. Indeed, if the appellant's suggestion to the contrary were accepted the consequences under our existing statutory enactments would appear to be incongruous. Churches, hospitals, religious societies and public libraries would receive only partial exemption under the specific terms of R.S. 54:34-2(b), whereas historical museums would receive total exemption under the general terms of R.S. 54:34-4(d). Nowhere do we find any evidence of legislative intent to prefer historical museums or societies over public libraries and the others. It may be noted that R.S. 54:4-3.6 which provides for exemptions from property taxation, in its early specific enumerations, refers to buildings used for public libraries generally but only to buildings used for historical societies, associations or exhibitions when owned by the State, county or any political subdivision thereof, and *219 that the listing therein of "colleges, schools, academies or seminaries" was transposed into "educational institutions" in the course of the Supreme Court's opinion in Kimberley School v. Town of Montclair, 2 N.J. 28, 34 (1948).
Considering all of the pertinent legislative enactments now in force (cf. In re Huyler, 133 N.J.L. 171, 173 (Sup. 1945)) we have determined that an historical museum such as that operated by the appellant, devoted to public education in accordance with its charter mandate, may be deemed to be a benevolent or charitable organization within R.S. 54:34-2(b) but may not be deemed to be an educational institution within R.S. 54:34-4(d). Accordingly, the transfer to the appellant should have been assessed at the rate provided in R.S. 54:34-2(b).
The assessment is set aside and the cause is remanded to the Division of Taxation for further proceedings in accordance with this opinion.