CONLEY, J. T. C.
This matter concerns the tax exempt status of a portion of plaintiff’s property for the year 1976. As of October 1,1975, the assessing date, plaintiff owned contiguous tracts of land in *294 Alexandria Township, Hunterdon County, known as Camp Teeumseh, which consisted in total of 292.65 acres. The property was used as a summer camp. The township granted a tax exemption to a large portion of the camp property for 1976. That exemption is not at issue. At issue is the assessment on Block 10, Lot 26, consisting of 120 acres. This parcel was assessed as follows: Land — $117,000; Improvements — $30,000; Total — $147,000. The Hunterdon County Board of Taxation reduced the land assessment to $26,500, for a total assessment of $56,500. Plaintiff seeks a total exemption for the 120 acre parcel pursuant to N.J.S.A. 54:4-3.6.
Plaintiff acquired the subject property in 1974 as an addition to its existing camp. The new tract contained a number of nature trails, campsites, wooded areas and farmland. Approximately 35 to 45 acres were farmed in 1975 by a local farmer who grew field corn and hay. Two structures were located on the subject property in 1975, a barn used for the storage of hay and equipment and a small residence used by camp staff. The parties stipulated that an additional 54 “structures” were located on the original, main camp property, including a dining hall for 250 people, a quonset building that could accommodate 400 people, a 10-bed infirmary, a lodge for staff quarters, two year-round staff residences, 23 campers’ cabins for seven to nine campers each, a barn, a sewage treatment plant, miscellaneous outbuildings and nine permanent tent platforms.
At trial, plaintiff contended that the subject property was purchased solely as an adjunct to Camp Tecumseh and that it should be treated as part of that entity for purposes of tax exemption. Plaintiff’s witness stated that the 120 extra acres of land were needed for the camp’s recreational and educational purposes, and that in fact much of the land was already being used by campers for hiking and camping prior to the purchase. All of the children utilizing the camp were from urban areas and plaintiff arranged for the land to be farmed and for animals to be boarded on the camp property so that the nearly 1,000 campers each summer (150 campers in each of six sessions) could learn about country living and farm life as part of their educa *295 tional experience. Plaintiff’s witness also testified that part of the additional acreage formed the watershed for the camp’s 15 acre lake and that protection of the watershed was essential to protection of the lake.
Plaintiff relies upon N.J.S.A. 54:4-3.6 in support of its claim for a total tax exemption for Block 10, Lot 26. That statute was analyzed by the Supreme Court in connection with the tax exempt status of a large summer camp in Boys’ Club of Clifton, Inc. v. Tp. of Jefferson, 72 N.J. 389, 371 A.2d 22 (1977). In that case, the court summarized its holding as follows:
(1) where buildings are owned by an association or corporation whose status satisfies the requirements of NJ.S.A. 54:4-3.6, such as a corporation, like the Boys’ Club, organized exclusively for the moral and mental improvement of children, whose buildings are used actually and exclusively for its beneficent purposes; (2) where the land on which the buildings are located as well as adjacent and adjoining properties, irrespective of the date of acquisition, is devoted exclusively to the same or similar purposes of the institution, and the land usage is reasonably necessary for the purposes and functions related to the utilization of the buildings, and does not exceed five acres per building; and (3) where the organization’s operations are not conducted for profit or, if the land and buildings in question are operated profitably, the excess funds are applied to the institution’s commendable objectives, then such buildings and land are entitled to exemptions from local real property assessments and taxes in accordance with N.J.S.A. 54:4-3.6. [Id. at 404^05, 371 A.2d 22],
Plaintiff presented adequate testimony for the court to conclude that the purposes of plaintiff’s organization and its use of the subject property generally comport with the requirements of N.J.S.A. 54:4-3.6. The township does not dispute these generalities. The township’s position as set forth in its pretrial memorandum is a denial that plaintiff needs the full 120 acres for its camp purposes. Defendant’s sole contention is as follows:
Defendant contends that the relationship of the number of buildings to the land is not such as to entitle Plaintiff to an exemption of five acres for each and every building. The very fact that portions of the subject lands are still being actively farmed demonstrates that a full five acres is not necessary to the fair enjoyment of each building.
This issue was discussed in the Boys’ Club case, in which the court stated the test to be whether the camp’s acreage was “reasonably necessary to accomplish the institution’s purpose” of operating a boys’ camp. Id. at 401, 371 A.2d 22. In rejecting the assessor’s allocation in Boys’ Club of only one quarter acre *296 for each cabin, the court stated that the cabins were to house boys who were at that location in order to enjoy and participate in an educational and character development experience which depended in part on the natural environment afforded by the acreage. The court found that the entire acreage was an integral part of the camp function, for which 28 buildings were utilized and occupied, and that therefore the land was “necessary for the fair enjoyment” of the camp buildings. Id. at 403, 371 A.2d 22.
Similarly, in the present case, all the acreage of Camp Tecumseh, including the subject property, was “reasonably necessary” for the operation of the camp. The children utilized hiking trails and campsites throughout the camp, and the farming activity conducted on the subject property was an important part of plaintiff’s overall educational offering to the campers. I conclude therefore that plaintiff has carried its burden of demonstrating that all of its acreage is “necessary for the fair enjoyment” of the camp’s buildings.
There is a factor in this case not present in Boys' Club, however. In that case the camp had 28 buildings and 100 acres, so that all of its acreage was entitled to be exempt, calculated upon the basis of five acres for each building. In the present case, even if all 56 “structures” on the entire camp property are considered, plaintiff can be entitled to an exemption for a maximum of 280 acres (56 “structures” multiplied by the five acres necessary for the enjoyment of each structure). In establishing the five acre per building limitation, the Legislature placed its main emphasis on the exemption of buildings and did not intend vast land holdings to be exempted except insofar as they were necessary for the enjoyment of related buildings. Vacant land is entitled to no exemption under N.J.S.A. 54:4-3.6. Land must be associated with and be necessary for the enjoyment of buildings before it can be considered for exemption under this section. Since plaintiff’s entire property consists of 292.65 acres, of which at most 280 acres can be exempt, and since the main campground was granted an exemption as to all *297 its acreage, 12.65 acres of land in Block 10, Lot 26 must be taxable for 1976.
The issue next presented is what the Legislature intended by its use of the term “buildings.” No definition is contained in the exemption statute. Alexandria Township argues that the “nine permanent tent platforms” are not “buildings” within the intent of the law. The court in Boys’ Club did not deal with this issue. In Boys’ Club, the court merely noted that on the club’s property there were “approximately 28 buildings which consisted primarily of a mess hall, infirmary, recreation hall, bathhouse, eleven boys’ cabins and four cabins for the staff.” Id. at 396, 371 A.2d 22.
The only reported case to construe the term “buildings” as used in the context of the exemption statute involved in this matter, or a predecessor statute, is Children’s Seashore House v. Atlantic City, 68 N.J.L. 385, 48 A. 242 (E. & A. 1902). In that case, the court dealt with language of the general tax act adopted in 1866 and then still in force, which contained an exemption for
... all buildings used exclusively for charitable purposes, with the land whereon the same are erected and which may be necessary for the fair enjoyment thereof
This language is unquestionably the source of the current language of N.J.S.A. 54:4-3.6, which, insofar as it is relevant to this matter, provides an exemption for
... all buildings actually and exclusively used in the work of associations and corporations organized exclusively ... for religious, charitable or hospital purposes ...; the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed 5 acres in extent.. . .
Inasmuch as the act providing for a property tax exemption has been amended on numerous occasions and the term “buildings” has been used consistently by the Legislature without amplification, it must be assumed that the only judicial construction of that term was consistent with and expressive of legislative intent. Quaremba v. Allan, 67 N.J. 1, 14-15, 334 A.2d 321 (1975). This principle of statutory construction is frequently *298 applied in matters involving the complexities of our various tax laws, with which the Legislature is intimately and regularly concerned. See Brewer v. Porch, 53 N.J. 167, 179-180, 249 A.2d 388 (1969); D. L. & W. R. Co. v. Division of Tax Appeals, 3 N.J. 27, 37-38, 68 A.2d 749 (1949), app. dism. 338 U.S. 946, 70 S.Ct. 488, 94 L.Ed. 583 (1950).
In Children’s Seashore House, supra, the court dealt with an exemption claim of a charitable organization whose corporate purposes were “to provide at Atlantic City a house and medical treatment during the summer season for invalid children and those needing the benefit of sea air.” The organization had already obtained an exemption for its main house and buildings, but it sought an exemption for a lot one mile away from its main property and consisting of an entire city block fronting on the ocean. The lot had been purchased with the intent of selling the main property and moving the institution to the new lot, but the organization decided to use the lot as a camp for the care of boys it could not accommodate in the main institution. The claim of exemption was based upon the location on the lot of two sleeping tents, one dining tent and a one-story frame structure used for a kitchen and laundry. The opinion is silent as to the nature of the tents involved or whether tent platforms were used. The opinion states only that the tents were occupied by campers from July 1 to September 1 and then were taken down for the balance of the year.
In reviewing the exemption claim based upon these structures being “buildings,” the court developed and applied a twofold analysis. The first part of the analysis might be termed the structural test, since it deals only with the basic construction of the “building” at issue. The court used this test in determining that the tents on the plaintiff’s lot were not buildings. The court’s treatment of tents was as follows:
In considering the question here raised we might ask what is a building in the sense of the statute. According to Webster, a building is defined as ‘that which is built; a fabric or edifice constructed, as a house, a church,’ &c. This definition was adopted in construing the word as used in the Mechanics’ Lien law in Coddington v. Dry Dock Co., 2 Vroom 477. It needs no argument to conclude that a tent is not a building. [68 N.J.L. at 389-390, 48 A. 242].
*299 It appears from this quotation that the court did not consider a tent to have the physical characteristics with respect to material and design that are inherent in buildings. Thus, a tent does not meet even the structural test under the statute.
The court in Children’s Seashore House then set forth the second part of its analysis, that even if a structure were to come within the ordinary meaning of the term building in its broadest sense, thus meeting what I have called the structural test, it might not be a building within the intent of the exemption statute. The court’s reasoning was as follows:
The word ‘building’ in a statute will almost always depend for its meaning in some degree upon the particular subject-matter and its connection with other words.... The associated words where, as in this clause, buildings are the principle subject-matter of the exemption, are colleges, school-houses, buildings erected and used for religious worship, buildings used as asylums or schools for the care, cure, maintenance and education of feeble-minded persons and children. This circumstance indicates that the buildings here intended were to be such as would comfortably house the class of persons to be benefited by the charity and the officers and agents who were to administer same. . . . The qualifying words, ‘used exclusively for charitable purposes,’ further point to the building as a place where the charitable use was to have a concrete existence. Again, the words, ‘and the land, etc., necessary to the fair enjoyment’ of the buildings, shows that the building was to be the principal factor in the scheme and not a mere incident to the purposes of the encampment or some other temporary device. [Id. at 390, 48 A. 242].
It was the opinion of the court that a less restrictive definition of the term buildings as used in the statute “might have the effect of encouraging evasions of this wholesome law and the consequent exemption, unlawfully, of large aggregations of. property from the common burden of taxation.” Id. at 391, 48 A. 242. The court in that case held that although the frame structure used for a kitchen and laundry was a building in the broadest sense of the word, it was not a building within the intent of the statute.
This second part of the court’s test is somewhat more elusive than the first part, but it seems to hinge upon the design function of the structure at issue. This functional test is distinct from the issue of the actual use of the buildings. Cf. Clinton Tp. v. Camp Brett-Endeavor, Inc., 1 N.J.Tax 54 (1980). *300 Rather, it involves a determination of the purpose for which a structure was intended, as related to the purpose of the charitable organization. As stated above, this construction of the term “buildings” by the highest court of the State must be considered expressive of the intent of the Legislature in using the term. This narrow construction is also in keeping with the basic principle that generally statutes granting exemptions from taxation are strongly construed against those seeking exemption. Princeton Univ. Press v. Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961).*
In the present case, plaintiff has relied upon “nine permanent tent platforms” to support a claim for exemption of 45 acres of its land in Block 10, Lot 26. Plaintiff is entitled to an exemption of these acres only if the tent platforms are “buildings” as used in N.J.S.A. 54:4-3.6. The tent platforms on plaintiffs property were constructed of wood and were 18 to 24 feet square in size. The platforms rested on single cinderblocks spaced more or less evenly under the structures to keep them off the ground. The cinderblocks were not embedded in the ground *301 except as might be necessary to insure a level platform. The platforms remained at two campsites during the entire year, although tents were pitched on them only during the summer camping season. Plaintiff used both wall tents and teepees on the platforms, and as many as nine campers could be accommodated in some of the tents. Campers stayed in cabins at the beginning of their eight-day sessions and then moved to the tents for a different kind of experience. Water was provided to the two campsites by means of an above-ground plastic hose running from a nearby cabin. At the campsites campers cooked their meals over outdoor campfires in fireplaces constructed from large rocks.
Plaintiff suggests that a permanent test platform is a building. I do not agree. A tent platform meets neither part of the twofold test developed by the court in Children’s Seashore House. The court in that case held that “a tent is not a building” in the structural sense. Id. at 390, 48 A. 242. A tent platform adds little to the structure of a tent. A platform is at most a floor, and a floor is not a building. It is perhaps conceivable that a tent and a permanent tent platform together could be considered a building in the very broadest sense of that term, because they are constructed, or erected, for the purpose of providing shelter for campers who would otherwise be housed in cabins and because taken together they have some resemblance in material and design to a building, but this would be an unreasonable conclusion. In order for something to qualify as a building in the structural sense, it must have more substance than canvas walls and a canvas roof.
Even if a tent and tent platform together were a building in the structural sense, they are not a building in the sense intended by the statute. A tent and tent platform structure does not meet the functional test developed in the Children’s Seashore House ease because it is what the Court of Errors and Appeals considered “a mere incident to the purposes of the encampment” and a “temporary device.” Campers’ cabins are *302 buildings within the intent of the statute because they provide permanently available housing that is obviously essential to plaintiffs purpose of operating a summer camp. The tents and tent platforms, however, were intended merely to supplement the campers’ cabins by providing the children with a more rustic experience for a few days. The tenting experience was not only incidental to the main operation of the camp but also of temporary duration. The campsites at which the platforms were located were also incidental and temporary, being serviced only by campfires and water from a hose. The Legislature did not intend that a charitable organization should receive an exemption for five acres of land because it had constructed a tent platform at a campsite.
In sum, plaintiff is entitled to an exemption for the year 1976 for its two buildings and land on Block 10, Lot 26 except for a total of 57.65 acres. This figure represents the 12.65 acres of excess land for which plaintiff did not have any structures at all, and the 45 acres I have disallowed with respect to the nine tent platforms.
At trial there were no proofs adduced as to the basis of the assessment placed upon Block 10, Lot 26, as modified by the Hunterdon County Board of Taxation, and I am therefore unable to direct the entry of a judgment effectuating this decision. Accordingly, I will temporarily withhold entry of judgment as provided for by R. 8:9-3. I direct defendant to serve upon plaintiff within ten days a written computation of a revised assessment pursuant to this decision. The computation shall refer to specific changes proposed to be made in the property record card for the subject property and shall have attached to it a copy of the present property record card. The parties shall file their agreed computations with the Clerk of the Tax Court within 20 days. If the parties are unable to agree upon the amount of the revised assessment, the matter will be placed upon the motion calendar for disposition pursuant to R. 8:9-4.

 In Children’s Seashore House, supra, the court said, in dictum, that the applicable principle of statutory construction was “that statutes in aid of such charitable purposes ... are not to be construed narrowly, but liberally.” Id. at 391, 48 A. 242. The court in its own dictum in Sisters of Charity v. Cory, 73 N.J.L. 699, 65 A. 500 (E. & A. 1906), characterized the dictum it had used in Children’s Seashore House as “an inaccuracy”. The court stated that “the true rule of construction” declared and adopted by the courts in England, by the United States Supreme Court and by the courts of almost every state of the union, was as follows:
A grant of exemption from taxation, being in the nature of a renunciation of sovereignty [or, as some jurists have expressed it, being in derogation of . the sovereign authority and of common right], must invariably be construed most strictly against the grantee, and can never be permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require. [73 N.J.L. at 706-707, 65 A. 500],
The specific holding of Sisters of Charity v. Cory pertaining to the exemption of after-acquired lands of a charity was overruled in Boys' Club of Clifton, Inc. v. Tp. of Jefferson, supra, but “the true rule of construction” has not been modified by our Supreme Court.